## STRICKLAND v. ISTROUMA WATER CO., Inc.

### No. 1528.

Court of Appeal of Louisiana. First Circuit.
Dec. 9, 1935.

Fred G. Benton and Dudley L. Weber, both of Baton Rouge, for appellant.

Chas. A. Holcombe, of Baton Rouge, for appellee.

ELLIOTT, Judge.

James M. Strickland, as the legal representative of Joseph M. Strickland, his minor son by adoption, claims of Istrouma Water Company, Inc., damages to the extent of $8,500, with legal interest. The claim is based mostly on injuries which he alleges his son sustained. Recovery is prayed for in behalf of his son, as the result of having stepped into an uncovered water meter hole constructed and maintained by Istrouma Water Company, Inc., as a part of its water system, situated in that part of the city of Baton Rouge known as Suburb Istrouma. But part of the amount claimed is for expenses which he had to undergo on account of the injury to his son.

Two amended and supplemental petitions were filed in order to get the facts properly stated.

The defendant denied that plaintiff's son was injured as a result of having stepped into a water meter hole. It is alternatively alleged that if he was injured in that way, it was the result of his own negligence in stepping into the hole. Defendant alleges that the hole was covered by a cement lid, and that plaintiff's son could not have stepped into it except by first removing the lid; that if plaintiff's son was injured it was due to his own negligence; that the injury was slight; and that plaintiff's son had entirely recovered previous to the trial.

Defendant prays that plaintiff's demand be refused and rejected.

There was judgment in favor of the plaintiff for $200, with interest. Plaintiff appeals and complains that the amount allowed is inadequate. Defendant has answered the appeal, and prays that plaintiff's demand be rejected, but, in case it is not, that the amount allowed be not disturbed.

Plaintiff's son was between 11 and 12 years of age at the time of the occurrence. There is no doubt that his son stepped into a water meter hole constructed and maintained by defendant in connection with its water system, and which it had negligently left uncovered for 8 or 9 months, perhaps a year. According to plaintiff, the meter hole was about 15 or 16 inches in length and width, and between 10 and 12 inches in depth, and was constructed near the edge of the sidewalk, next to the ditch which borders on the street. Some witnesses say that about two-thirds of the width and length of the meter box was on the sidewalk, and that about one-third extended beyond the sidewalk into the adjoining ditch. But two pictures in the record show that the meter box is all or practically all on the sidewalk.

Some of the witnesses testified that it was not quite as large as estimated by the plaintiff, but it was about a foot in depth. Judging by the pictures, we estimate that it is about the width and length stated by plaintiff and occupies part of the sidewalk. It could have been stepped into, without being observed, by a party walking on the sidewalk, who was not giving attention to where he was placing his feet. As stated, it was on the side of the sidewalk next to the ditch, which location rendered it less apt to be seen or stepped into, than if it had been in the center of the walk.

The witnesses were not asked whether the top of the meter box projected above the sidewalk. Pictures 2 and 4, offered in evidence by the plaintiff show, that the top of the box was practically even with the pavement on the sidewalk. When the lid was on, it was about even with the sidewalk and barely noticeable. The hole could have been easily seen by one looking ahead for holes as he walked forward, but, to one not intent on doing so, the hole would not be apt to attract attention. A witness named Hoover claimed to have stepped into it some time previous to the accident to plaintiff's son.

We reach the conclusion that the box, with the lid off, was a serious danger and menace to pedestrians on the sidewalk, easily stepped into, and not apt to be observed by one walking ahead, unless looking for holes, and that its presence there was due to gross negligence on the part of the defendant. Defendant contends that plaintiff's son was negligent for not seeing and stepping over the hole; citing cases. The cases cited are based on defects and holes in side-

walks of such nature that they constitute obvious dangers, etc. Varnado v. City of Baton Rouge, 5 La.App. 238; Vincent v. New Orleans Public Service, 18 La.App. 704, 138 So. 129; Moise v. New Orleans Public Service, 19 La.App. 703, 140 So. 505; Baudry v. New Orleans Public Service (La.App.) 145 So. 36; Suthon v. City of Houma (La.App.) 146 So. 515; Burns v. City of New Orleans et al. (La. App.) 155 So. 61, are cases of that kind. But the situation in this case is substantially and in principle the same that existed in Degeneres v. Pan-American Petroleum Corporation (La.App.) 153 So. 481.

In this case the depth of the hole constituted its chief danger. Its location on the side of the sidewalk next to the ditch kept it from being stepped into, except when a person, and as plaintiff's son says happened to him, was forced to walk over next to the ditch. We think the defendant is responsible in damages to plaintiff for having left it uncovered, as was done. It ought to have had a lid on it, and should have been kept covered.

It was not an obvious defect or hole which a pedestrian, with ordinary care and circumspection, should have seen and avoided, but constituted a menace to the safety of the sidewalk, which anybody, older than this boy, could easily fail to see and step into, and consequently get hurt.

The plaintiff appealed from the judgment which awarded him $200, with interest from judicial demand.

One of the items which the plaintiff claims is $150 on account of physician's bill, but the evidence on this subject fails to prove that plaintiff is entitled to recover this item. The plaintiff belongs to an organization which has this particular doctor in its employ. The physician who treated plaintiff's son, and for whom it is claimed, is obligated to furnish medical treatment to the plaintiff and his family without charge. The organization pays the physician. The plaintiff has greatly overstated the extent of the injury suffered .by his son. The evidence shows that his son was confined to bed about two weeks. He suffered serious pain when first injured, but the pain diminished in a few days. He used crutches 4 or 5 weeks in order to walk, and was kept out of school about 6 weeks,

failed to pass a certain grade, and thereby lost his school rating, which put him back 6 months. We think the loss of grade resulted from his injury, but the permanent physical incapacity alleged by the plaintiff does not exist. At the time of the trial, say 6 or 7 months after the injury, plaintiff's son may be said to have entirely recovered and to feel no more injury on account of his broken ankle; the break having been nothing more than a small piece of bone from off the lower end of the ankle bone. But we think $200 was not quite enough. We have decided to increase the amount to $300, with legal interest from judicial demand.

For these reasons, the judgment appealed from is increased from $200 to $300 from judicial demand, and, as thus amended, the judgment appealed from is affirmed; defendant appellee to pay the cost in both courts.